**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

_____

HARD DRIVE PRODUCTIONS, INC.,

                         Case No. 2:11-cv-00345

              Plaintiff,

                         Judge:  Hon. Henry C. Morgan, Jr.

v.

                         Magistrate Judge: Hon. Tommy E. Miller

JOHN DOES 1 ó 30,

              Defendants.

_____

**PLAINTIFF'S OBJECTIONS TO SEVERANCE ORDER TO THE HONORABLE
HENRY C. MORGAN JR, RESPONSE TO ORDER TO SHOW CAUSE AND MOTION
TO RECONSIDER TO THE HONORABLE TOMMY E. MILLER**

**INTRODUCTION**

Over 200 years ago, the framers of the U.S. Constitution recognized that written works and other forms of artistic expression were deserving of legal protection. U.S. Const. art. I, § 8. These fundamental principles regarding protecting and fostering artistic creation did not disappear simply because artistic works transitioned from tangible to digital. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 928ó29 (2005) (citing the concern that ödigital distribution of copyrighted material threatens copyright holders as never beforeö). Nor may these fundamental principles be denied to a group simply because that group is unpopular. *See* James Madison, Speech at the Virginia Constitutional Convention of 1829-30 (Dec. 2, 1829) (öIn Republics, the great danger is, that the majority may not sufficiently respect the rights of the minority.ö) There is nothing wrong with pursuing Internet-based copyright infringersô except, of course, from the perspective of an infringer.

Plaintiff's exclusive rights are being infringed on a massive scale. Attached as Exhibit A is a screenshot dated October 18, 2011, from one of the many websites devoted to BitTorrent-based piracy. Exhibit A shows that a basic query for the Plaintiff's flagship brand, "Amateur Allure" returns 201 results. It also shows that Plaintiff's copyrighted works are *currently* being illegally reproduced and distributed by *thousands* of infringers.[1] Attached as Exhibit B is a screenshot from the user forums on the same website. Exhibit B shows infringers thanking each other for distributing "Amateur Allure" content and requesting more.[2] Attached as Exhibit C is another screenshot from the user forums. Exhibit C shows infringer "bigman0682" warning other infringers that attorney John Steele, Esq. is prosecuting "Amateur Allure" infringers.

The only question facing copyright holders is whether courts will apply existing law— which incontrovertibly allows parties, such as Plaintiff, to pursue infringement actions— or unilaterally grant clemency to serial infringers like "bigman0682." The Court appears to be leaning towards the latter course. In response to claims and allegations made in sealed documents, the Court severed this action and ordered Plaintiff to show cause why it should be allowed to continue its undeniably meritorious litigation against serial infringers. Further, the Court ordered Plaintiff's counsel to disclose his association with attorney John L. Steele, Esq. Plaintiff has carefully reviewed the Court's Order and respectfully believes that it is inconsistent with the spirit and letter of the Federal Rules.

---

[1] While not ideal, these numbers are improvements from when Plaintiff began its anti-infringement campaign.

[2] In anticipation of the Court's suggestion that Plaintiff pursue the website, Plaintiff would note that dozens more similar websites exist and that past enforcement efforts against a given indexing website simply led to the formation of a new website— often in an overseas jurisdiction. End-user litigation is the only realistic means of addressing BitTorrent-based piracy.

In this response, Plaintiff first notes how this case presents a classic illustration of why anonymous litigation is so highly disfavored by the federal judiciary. Next, Plaintiff addresses the various mandates in the Court's show cause order. Finally, Plaintiff formally objects to the Court's severeance order, and, in the alternative, requests the Court to *sua sponte* reconsider its severance of this action.

## I.   THIS CASE PRESENTS A CLASSIC ILLUSTRATION OF WHY ANONYMOUS LITIGATION IS SO HIGHLY DISFAVORED BY THE FEDERAL JUDICIARY

*"Sunlight is the best disinfectant" –* Justice Louis D. Brandeis

Justice Brandeis understood the benefits of openness and transparency. In federal courts, openness and transparency are central to the proper functioning of the adversarial process. The legal standards for proceeding pseudonymously and restricting the public's right of access to court proceedings are incredibly high and have no chance of being met a copyright infringement action— even one involving adult content. For example, in the case cited by the Court, *Does I thru XXIII v. Advanced Textile Corporation*, the plaintiffs were allowed to proceed pseudonymously only where the disclosure of their identities would have resulted in their being, "fired from their jobs, deported from Saipan, and arrested and imprisoned by the People's Republic of China." 214 F.3d 1058, 1062 (9th Cir. 2000). There can be no serious argument made that the stakes are comparably high here.[3]

---

[3] In the cited case, the U.S. Court of Appeals for the Ninth Circuit reviewed other federal appellate decisions, and found that other Courts of Appeals had allowed pseudonymous litigation in only three situations: (1) when identification creates a risk of retaliatory physical or mental harm; (2) when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature, such as pregnancy, abortion, or homosexuality; and (3) when the anonymous party is compelled to admit his or her intention to engage in illegal conduct and thereby risk criminal prosecution. *Does I thru XXIII*, 214 F.3d at 1068. The Ninth Circuit's decision fell into the first of these categories, as the court found that the parties had "an objectively reasonable fear of extraordinarily severe retaliation." *Id.* at 1063.

The Court's recent order illustrates the perils of anonymous litigation. Based on the Court's discussion, the sealed pleadings discussed attorney John Steele, Esq. According to the Court, an anonymous filer claimed that he was called by Mr. Steele regarding this action, that Mr. Steele conveyed an offer of settlement to the anonymous filer and that Mr. Steele informed the anonymous filer that he would be named as a defendant in the case should the settlement offer be rejected.[4]

Plaintiff is confident that the sealed pleading contains false representations. Contrary to "Doe Defendant X's" representations, Mr. Steele has not personally "cold called" Virginia-based infringers in this action. Had the Court followed Justice Brandeis' wisdom and properly denied

---

It bears mentioning that the standard for restricting the public's right of access to court proceedings is even more rigorous than the standard for proceeding pseudonymously. *See Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (holding that the "presumption of access . . . can be rebutted if countervailing interests *heavily outweigh* the public interests in access" and that "[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption") (emphasis added).

[4] The Court appears to be uncomfortable that a putative defendant would receive an offer of settlement before being named and served with process. In Plaintiff's counsel's experience, an offer of settlement is a favored step in the litigation process because settlement itself is so highly encouraged by the Federal Rules. And, if it is the amount of the settlement offer that concerns the Court, Plaintiff would note the jury verdict in the case of Joel Tenenbaum, where a college student received a $675,000 judgment for infringing 30 works (or $22,500 per work). *See Sony BMG Music Entm't v. Tenenbaum*, at 6, Nos. 10-1883, 10-1947, 10-2052 (1st Cir. Sept. 16, 2011). The district court in that case reduced the award on constitutional grounds, but was reversed by the 1st Circuit on appeal. *See id.* at 3. Some courts nationwide have expressed wonderment that a Plaintiff could receive thousands of dollars for the infringement of a thirty-dollar video. However, it is not the proper role for a court to second-guess the judgment of the U.S. Congress, which decided that it would not be effective to simply charge infringers for the cost of the work that they stole. After all, what would be the point of paying for an authorized copy of a work if the penalty for stealing it was merely the work's cost? In order for lawsuits to serve as a deterrent for copyright infringement, the penalty for getting caught must be sufficiently high—hence, the availability of statutory damages under the Copyright Act. *See* 17 U.S.C. § 504.

the attempts of individuals in this case to litigate in the shadows, the Court would not have predicated its order on apparently false representations.

The Court's views on Mr. Steele— and by extension, Plaintiff's— have obviously been impacted by the sealed pleadings of putative infringers who have been impliedly granted the right to proceed pseudonymously. In its order, the Court heavily criticizes Mr. Steele, who has never even appeared before the Court. The Court goes so far as to label Mr. Steele as an attorney who "shoot[s] first and identif[ies] his targets later." The Court's support for this statement is a *single* order issued by the Honorable Judge Shadur of the Northern District of Illinois.[5]

A basic review of Judge Shadur's order, though, shows that he would require copyright holders to *identify* defendants *before* filing a copyright infringement lawsuit. *See* Mem. Order, *Boy Racer, Inc. v. Does 1–22*, No. 11-C-2984 (N.D. Ill. May 9, 2011). How this is possible in the context of Internet-based infringement is not discernible, although it does indicate why Judge Shadur believes that Mr. Steele— or any attorney who files a lawsuit against a John Doe defendant— is "shoot[ing] first" and "identify[ing] his targets later." *Id.*

Further, a review of recent decisions from federal courts in Illinois demonstrates an established consensus *in favor* of copyright infringement cases against anonymous Does. *See, e.g.*, *First Time Videos, LLC v. Does 1–76*, No. 11-C-3831, 2011 WL 3586245 (N.D. Ill. Aug. 16, 2011) (Bucklo, J.); First *Time Videos, LLC v. Does 1–500*, No. 10-C-6254, 2011 WL 3498227 (N.D. Ill. Aug. 9, 2011) (Castillo, J.); *Hard Drive Prods., Inc. v. Does 1–44*, No. 11-C-2828 (N.D. Ill. Aug. 9, 2011) (Holderman, C.J.), ECF No. 15; *MCGIP, LLC v. Does 1–14*, No.

---

[5] The Court incorrectly cites the single order in question as having been issued from the Central District of Illinois on May 5, 2011, when in fact such order was issued from the Northern District on May 9, 2011. *See* Mem. Order, *Boy Racer, Inc. v. Does 1–22*, No. 11-C-2984 (N.D. Ill. May 9, 2011). Plaintiff's counsel cannot help but note that "Doe Defendant X's" weakly supported attack on Mr. Steele bears all of the hallmarks of "shoot[ing] first" and asking questions later. *Id.*

11-C-2887 (N.D. Ill. July 26, 2011) (Lindberg, J.); *MGCIP* [sic] *v. Does 1–316*, No. 10-C-6677, 2011 WL 2292958 (N.D. Ill. June 9, 2011) (Kendall, J.); *cf. Hard Drive Prods., Inc. v. Does 1–25*, No. 11-C-3864 (N.D. Ill. Aug. 7, 2011) (Lefkow, J.) (denying motion to quash). The sealed pleading failed to provide the Court with a fair representation of the state of copyright infringement actions.

The manipulation of the facts by Does to this Court provides a classic illustration of why pseudonymous litigation and sealed pleadings are so highly disfavored by United States federal courts. Plaintiff respectfully requests an immediate ruling on all outstanding motions to proceed pseudonymously because the legal standard for pseudonymous litigation in this case has no chance of being met and Plaintiff has suffered and is continuing to suffer prejudice from improperly sealed submissions. *See, e.g.*, *Does 1 thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1068ó69 (stating that ò[t]he court must . . . determine the precise prejudice [resulting from a grant of anonymity] at each stage of the proceedings to the opposing party, and whether proceedings may be structured so as to mitigate that prejudiceö and finding that the district court erred by, *inter alia*, õfailing to identify specific prejudice to [the opposing parties]ö).

## II.   PLAINTIFF'S RESPONSE TO ORDERS TO SHOW CAUSE AND ORDER FOR DISCLOSURE

The Court ordered Plaintiff to show cause on a variety of grounds. In addition, the Court ordered Plaintiffós counsel to disclose his association with attorney John L. Steele, Esq.

### 1.   The materials gained by the Rule 45 subpoenas should not be suppressed

The materials gained by the Rule 45 subpoenas previously issued in this matter should not be suppressed because there is no lawful basis for their suppression. As an initial matter, Plaintiff would note for the record that the Court raises this issue *sua sponte*; no motion for

suppression is before the Court. A court's authority to suppress lawfully obtained evidence *sua sponte* is unclear.

Second, this action is a civil matter that does not involve any government action that would invoke the Fourth Amendment's suppression doctrine. As the Supreme Court explained in *United States v. Janis*, 428 U.S. 433, 447 (1976), "In the complex and turbulent history of the [exclusionary] rule, the Court never applied it to exclude evidence from a civil proceeding, federal or state." *See Thompson v. Carthage Sch. Dist.*, 87 F.3d 979, 981 (8th Cir. 1996); *United States v. Tauil-Hernandez*, 88 F.3d 576, 581 (8th Cir. 1996) ("The Supreme Court has declined various invitations to extend the Fourth Amendment exclusionary rule beyond the criminal trial."); *see also Meja v. City of New York*, 119 F. Supp. 2d. 232, 254 n.27 (E.D.N.Y. 2000) (citing *Pennsylvania Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 363 (1998)) ("[T]he Fourth Amendment's exclusionary rule does not apply in civil actions other than civil forfeiture proceedings."); *Vander Linden v. United States*, 502 F. Supp. 693, 696 (S.D. Iowa 1980) ("On a number of occasions the United States Supreme Court has stated that the purpose of the exclusionary rule is to safeguard Fourth Amendment rights by deterring future and unlawful police conduct.").

Third, Plaintiff has not engaged in any form of misconduct in this case. On June 17, 2011, Plaintiff filed its complaint. Shortly thereafter, Plaintiff filed its motion seeking the Court's leave to issue Rule 45 subpoenas. On July 1, 2011, the Court granted Plaintiff's motion for leave to seek expedited discovery. (ECF No. 5.) Pursuant to that order, Plaintiff issued subpoenas *duces tecum* to the Internet Service Providers identified in Plaintiff's complaint. After receiving subpoena returns from the ISPs, Plaintiff extended good faith offers of settlement to the putative defendants that were identified. The litigation process was progressing expeditiously until the

Court abruptly severed this action, *sua sponte*. Plaintiff's pleadings and litigation have withstood scrutiny from many of this nation's leading copyright jurists. *See, e.g.*, *Hard Drive Prods., Inc. v. Does 1–44*, No. 11-C-2828 (N.D. Ill. Aug. 9, 2011) (Holderman, C.J.), ECF No. 15; Order Denying Doe's Motion to Quash, *Hard Drive Prods., Inc. v. Does 1–46*, No. C-11-1959 EMC (N.D. Cal. June 23, 2011) (Chen, J.), ECF No. 22; Order Denying Does' Motions to Quash, *Hard Drive Prods., Inc. v. Does 1–46*, No. C-11-1959 EMC (N.D. Cal. June 16, 2011) (Chen, J.), ECF No. 19. Nothing that Plaintiff has done in this litigation could be described as improper.

Finally, suppression of the subpoena returns would amount to a dismissal with prejudice of the Doe Defendants in this action. The subscriber data maintained by the ISPs has expired. If the Court suppresses the information gathered pursuant to lawful subpoenas, then Plaintiff will have no means of pursuing its meritorious copyright infringement claims against serial infringers.

> **2.      Why the Doe Defendants should not be finally dismissed**

The Court ordered Plaintiff to show cause for why the Doe Defendants should not be finally dismissed from this action. Plaintiff is unclear as to whether "finally dismissed" refers to a dismissal with prejudice or a dismissal without prejudice. Regardless, either form of dismissal would be inappropriate.

First, the Court's order focused exclusively on misjoinder. Even if the Court rejects Plaintiff's arguments regarding joinder, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21.

Second, the jurisdiction of a United States magistrate judge does not extend to judgments on the pleadings or for summary judgment. 28 U.S.C. § 636(b)(1)(A). Even if Fed. R. Civ. P. 21

did not exist, United States magistrate judges lack jurisdiction to "finally dismiss" Doe

Defendants. *Id.*

Finally, the Plaintiff's claims remain meritorious. The Court's order provides no

suggestion for why Plaintiff should not be allowed to prosecute serial infringers of its works.

### 3.  The relationship attorneys Tim Anderson, Esq. and John Steele, Esq.

Attorney John Steele, Esq. is a member of Steele Hansmeier, PLLC. Steele Hansmeier,

PLLC serves as primary copyright infringement counsel to Hard Drive Productions, Inc. and has

filed dozens of copyright lawsuits nationwide on its behalf. Tim Anderson is a shareholder of

Anderson & Associates, PC. Anderson & Associates is pursuing Virginia-based infringers on

behalf of Hard Drive Productions, Inc. The primary association between Steele Hansmeier,

PLLC and Anderson & Associates, PC is that Steele Hansmeier, PLLC performs administrative

back-office support functions in copyright infringement actions, which require a significant

amount of specialized infrastructure for settlement communications, subpoena processing and

data management.

Plaintiff must communicate its concern with the Court's focus on attorney John L. Steele,

Esq. Plaintiff has a high degree of respect for the Court and does not believe that the Court

would ever improperly prejudice Plaintiff's rights in this or any case. All Plaintiff requests from

this Court is for its arguments to be considered on the merits of its legal arguments, not on what

pseudonymous parties say in sealed pleadings about Mr. Steele. To be sure, a subset of serial

infringers that are targeted in anti-infringement litigation have taken to the Internet to engage in

reputational smear campaigns. The smear rhetoric often finds its way into pleadings filed by

putative defendants. As in the pseudonymous filer's attempt to describe an "emerging consenus"

against Mr. Steele, the smear rhetoric collapses immediately under even the most modest scrutiny.

### III.   PLAINTIFF'S MOTION FOR RECONSIDERATION AND FORMAL OBJECTION UNDER FED R. CIV. P. 72

Plaintiff hereby objects to the Court's severance order and, in the alternative, respectfully requests the Court to *sua sponte* reconsider its October 17, 2011 order severing this action. A recent order of this Court in *Bel IP LLC v. Boomerangit Inc.*, No. 2:11-cv-188 (E.D. Va. Aug. 26, 2011) demonstrates the wisdom of deferring a severance decision at the early discovery stage of litigation. In that case, the court rejected a Rule 21 challenge to joinder in the patent infringement context for reasons that are directly applicable here. *See Id.*

The Court declared in *Bel IP* that "[t]he Court will not impede judicial economy and sever an action when it is uncertain whether a party will be prejudiced [by joinder]." No. 2:11-cv-188, at 2. In that case, the Court found that no defendant was "prejudiced by remaining a party to [the] action during discovery," and that "any prejudice . . . [would] occur at trial." *Id.* Thus, the Court found it proper to sustain joinder at the discovery stage of the litigation even when it was unclear whether the defendants' "accused products [were] *distinct*" from one another. *Id.* (emphasis added).

In this case, *sua sponte* severance is similarly premature. Plaintiff has alleged that all of the Does were members of a group of infringers that distributed pieces of Plaintiff's work among each other, either directly or via a chain of data distribution. This is directly analogous to *Bel IP*, where all defendants' products were accused of infringing the same patent. *See Bel IP*, No. 2:11-cv-188, at 2. There, because "discovery ha[d] just commenced," the parties did not know the extent to which the accused products differed, and therefore it was impossible to tell whether defendants would assume contrary positions. *Id.* Here, discovery has likewise just commenced,

10

and neither Plaintiff nor the Court can yet know the extent to which any defendants will present

separate defenses or facts, or the details of their specific interactions within the gang of

infringers.[6]

      This Court should follow the same prudential path in administering justice and postpone

severance as premature at this time. Any prejudice to the Doe Defendants stemming from joinder

will arise later in the litigation, if at all. Until the Doe Defendants have been identified, any claim

of prejudice against them is simply implausible. The appropriate time for the Court to address

such issues is when and if the Doe Defendants present actual distinctions that warrant severance,

or when and if severance would serve, rather than hinder, the purpose of judicial economy.

      Plaintiff also notes that its pleadings exhaustively satisfy the joinder requirements of Fed.

R. Civ. P. 20(a).[7] Plaintiff's pleadings have specifically alleged that all Defendants participated

in one single civil conspiracy to commit copyright infringement (Compl. ¶ 8), that each

Defendant engaged in the same series of transactions involved in the distribution of Plaintiff's

copyrighted work (*id.*), that each Defendant intentionally engaged in concerted action with other

Defendants by entering a single torrent swarm to accomplish the reproduction and distribution of

Plaintiff's copyrighted work (*id.*), and that Plaintiff has a right to relief against Defendants

---

[6] In fact, until the conclusion of initial discovery, neither Plaintiff nor the Court can yet know how many Doe Defendants are truly involved in this litigation, and whether the Court would be severing multiple claims against the same individual. *See* Pl.'s Notice of Dismissal With Prejudice, *First Time Videos, LLC v. Does 1–28*, No. 1:11-cv-2982 (N.D. Ill. Sept. 26, 2011), ECF No. 15 (noting that, after the return of subpoena responses, it was discovered that *each* of the 28 IP addresses listed in the complaint was, in fact, associated with the *same* individual infringer).

[7] The order in this matter appears to borrow heavily from the Memorandum Order issued by the Honorable Judge Gibney in *K-Beech, Inc. v. John Does 1-85*, No. 3:11-cv-469-JAG (October 5, 2011 E.D. Va.). Although the *K-Beech* action was a suit for copyright infringement, neither Plaintiff nor Mr. Steele have any association whatsoever with the attorney or plaintiff in that action. Further, Plaintiff's pleadings differ materially from the pleadings at issue in the *K-Beech* case. Finally, the *K-Beech* order was prompted, at least in part, by the Court's view that the attorneys in that action had acted improperly.

jointly and severally. (*Id.* at 9 ¶ 4.) Plaintiff's pleadings thus specifically and thoroughly satisfy
Fed. R. Civ. P. 20(a)(2)(A). Plaintiff also specifically identified common questions of law certain
to arise in this litigation. (*Id.* ¶ 8.) Plaintiff's pleadings thus plainly satisfy Fed. R. Civ. P.
20(a)(2)(B). Both preconditions set forth in Fed. R. Civ. P. 20(a) are exhaustively satisfied.

      The Court suggests that "mere allegations that Doe Defendants have used the same peer-
to-peer network to copy and reproduce their videos are insufficient to meet the standards of
joinder." (Op & Order, at 6, Oct. 17, 2011.) However, as described above, Plaintiff has not
merely alleged that the Doe Defendants used the same peer-to-peer network to copy and
reproduce their videos. Plaintiff has actually alleged that the Doe Defendants collaborated with
one another by exchanging pieces of Plaintiff's file with one another either directly or in the
same chain of data distribution via the BitTorrent protocol. These allegations would traditionally
exhaustively satisfy the Rule 20(a) transaction or occurrence tests, particularly in light of the fact
joinder rules are, "to be construed liberally in order to promote trial convenience and to expedite
the final determination of disputes, thereby preventing multiple lawsuits." *Save Lake Tahoe v.
Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977); *See also United Mine Works of
Am. v. Gibbs,* 383 U.S. 715, 724 (1966) (stating, "Under the Rules, the impulse is toward
entertaining the broadest possible scope of action consistent with fairness to the parties; joinder
of claims, parties and remedies is strongly encouraged.").

      Moreover, the Court should be aware that the decision it cited to in support of its
severance decision is outdated. In that case, the court in the Northern District of California later
held the *exact opposite* of the proposition for which it was cited:

> Plaintiff cures [the] deficiency [in supporting joinder, which was
> the subject of the court's prior order] by alleging in the [First
> Amended Complaint] that the twenty-one Defendants participated
> in a single "swarm" in which Plaintiff's Work was reproduced and

distributed. This allegation is plausible in light of the level of detail provided by the Hansmeier declaration and the relative temporal proximity of the alleging acts. As such, each Doe Defendant is alleged to have participated in a scheme to distribute the Work by sharing pieces of the computer file comprising the Work with the other Doe Defendants.

Order Granting Request for Leave to Take Early Discovery, at 6, *Millennium TGA, Inc. v. Does 1–21*, No. 11-2258 SC (N.D. Cal. July 22, 2011), ECF No. 14 (Conti, J.). A decision to allow Plaintiff to maintain joinder at this early stage of the litigation is consistent with Plaintiff's pleadings and the liberal standard applicable to joinder decisions. Indeed, this is why õ[T]he overwhelming majority of courts have denied as premature motions to severö at the early litigation stages of comparable copyright infringement actions. *First Time Videos, LLC v. Does 1-76*, 2011 WL 3586245 (N.D. Il. 2011) (collecting cases). *See also Patrick Collins, Inc. v. Does 1-35*, No. 11-CV-00406 (E.D. Va. filed July 8, 2011) (õ[w]ithout prejudice to the ability of any defendant or third party to raise the joinder issue later in this litigation, the court finds on the present record that plaintiff has shown proper joinder of these putative defendants *prima facie.* That concern having been satisfied, the court follows the weight of authority in finding plaintiff is entitled to discovery at this stage to determine the identities of John Doe Defendants.ö).

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests the Court to deny all efforts at pseudonymous litigation, allow Plaintiff to continue its meritorious litigation against serial infringers and reverse its severance decision.

[intentionally left blank]

Respectfully submitted,

HARD DRIVE PRODUCTIONS, INC.

**DATED:**  October 24, 2011

By:     /s/ Timothy V. Anderson
TIMOTHY V. ANDERSON (VSB 43803)
Anderson & Associates, PC
2492 N. Landing Road, Suite 104
Virginia Beach, VA 23456
Telephone: (757) 301 ó 3636
Facsimile: (757) 301 - 3640
E-mail: timanderson@virginialawoffice.com
*Counsel for Plaintiff*

14

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 24, 2011, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system.


   /s/ Timothy V. Anderson   
TIMOTHY V. ANDERSON